UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID KIRCHER,

       Petitioner,

                           CASE NO. 2:12-CV-14477

   v.                        JUDGE ROBERT H. CLELAND

                           MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA SCUTT,

       Respondent.

_____/

## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) AND PETITIONER'S MOTION FOR SUMMARY JUDGMENT (docket #20)

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    *Claims Relating to Scope and Validity of the Statutes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.     *Applicability of § 324.3115* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.     *Discharges onto Land* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        3.     *Vagueness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        4.     *Lack of Intent or Scienter Requirement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    E.    *Claims Relating to the Validity of the Charges* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        1.     *Lack of Probable Cause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        2.     *Vague Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        3.     *Variance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    F.    *Claims Relating to the Trial Court's Findings and the Evidence Against Petitioner* . . . . . . . . 25
        1.     *Sufficiency of the Trial Court's Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        2.     *Actual Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        3.     *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    G.    *Equal Protection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    H.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    I.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 34
        1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and his motion for summary judgment, and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner is a former state prisoner who, at the time he filed his habeas petition, was incarcerated at the Parnall Correctional Facility in Jackson, Michigan.  According to the Michigan Department of Corrections's Offender Tracking Information System (OTIS) website, petitioner has been discharged from his sentence.[1]

2.      On October 12, 2006, petitioner was convicted under the Michigan Natural Resources and Protection Act (NREPA) of water resources protection violation, MICH. COMP. LAWS § 324.3115(2); and water resources protection violation posing a substantial endangerment, MICH. COMP. LAWS § 324.3115(4), following a bench trial in the Washtenaw County Circuit Court.  On December 20, 2006, he was sentenced to a term of six months' imprisonment on the water resources protection conviction, and to a concurrent term of five years' imprisonment on the water resources protection violation posing a substantial endangerment conviction.  The trial court also imposed a

---

[1]In order to attack a conviction through habeas corpus, a petitioner must be "in custody" pursuant to that conviction at the time the habeas application is filed.  "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis supplied by Court); *see also*, 28 U.S.C. § 2254(a).  This requires "that the habeas petitioner be 'in custody' *under the conviction or sentence under attack* at the time his petition is filed." *Maleng*, 490 U.S. at 490; *see also, Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  Where, as here, a petitioner is released during the pendency of his petition, a court is not divested of jurisdiction so long as the petitioner was "in custody" at the time the petition was filed.  *See Carafas*, 391 U.S. at 238; *York v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988).  Thus, this Court has jurisdiction over petitioner's habeas application notwithstanding his discharge from the sentence imposed.

fine of $1,000,000.00.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.      GIVEN THE VAGUENESS OF THE TERM "SUBSTANCE THAT IS OR
        MAY BECOME INJURIOUS," MCL 324.3109(1) IS
        UNCONSTITUTIONAL, UNLESS SUFFICIENTLY CLARIFIED BY THE
        PROOF STANDARD PROMULGATED BY RULE 62.

II.     THE TRIAL JUDGE'S REJECTION OF THE STANDARD OF PROOF OF
        RULE 62, AND ADOPTION OF THE ALTERNATIVE, "BURDEN-
        TRANSFERRING" THEORY OF PROOF, WHICH ENLARGED THE
        SCOPE OF APPLICABILITY OF 324.3109(2)'S PRIMA FACIE
        EVIDENCE RULE, HAS DEPRIVED DEFENDANT OF HIS
        CONSTITUTIONALLY REQUIRED PRESUMPTION OF INNOCENCE,
        AND, AS APPLIED, HAS RENDERED THE STATUTORY
        PRESUMPTION UNCONSTITUTIONALLY VAGUE.

III.    THE COURT ERRED IN DENYING THE MOTION TO DISMISS UPON
        2004 PA NO. 72, WHICH BY ITS PLAIN TERMS IS INTENDED TO
        PUNISH A PERSON WHO DISCHARGES "UNTREATED SEWAGE"
        INTO WATERS OF THE STATE, IF AND ONLY IF THE PERSON FAILS
        TO DO TWO THINGS: (i) GIVE PROMPT NOTICE OF THE
        DISCHARGE TO THE DEQ AND LOCAL AUTHORITIES, AND (ii)
        "TEST AFFECTED WATERS FOR E.COLI TO ASSESS THE RISK TO
        THE PUBLIC HEALTH."

IV.     THE COURT ERRED IN FINDING, WITHOUT A *FRYE-DAVIS*
        HEARING, THAT "THERE IS CERTAINLY A SENSE WITHIN THE
        SCIENTIFIC COMMUNITY THAT THERE IS A PER SE HAZARDOUS
        NATURE TO THE SUBSTANCE."

V.      THE COURT ERRED IN FAILING TO DISMISS THE CHARGES BASED
        ON HARMS NOT ASSOCIATED WITH WATERS OF THE STATE, AND
        BY IGNORING THE GREAT WEIGHT OF THE EVIDENCE SHOWING
        THE REASONABLENESS OF DEFENDANT'S MISTAKE OF FACT
        AND THAT HIS RESPONSE TO THE PLUMBING EMERGENCY WERE
        ENTIRELY POSITIVE AND CLEARLY NOT "IN SUCH MANNER AS
        TO CAUSE A DANGER OF DEATH OR SERIOUS BODILY INJURY"
        TO USERS OF THE HURON RIVER.

VI.     THE COURT ERRED IN FINDING THAT EASTERN HIGHLANDS IS

3

NOT A FACILITY FOR PURPOSES OF THE DEQ'S AMNESTY PROGRAM, AND REFUSING TO ADMIT THE DEQ'S AMNESTY ORDER ISSUED TO DEFENDANT KIRCHER.

VII.    THE COURT ERRED IN DENYING DEFENDANT'S NECESSITY, OR CHOICE OF EVILS, DEFENSE.

VIII.   THE COURT'S REJECTION OF MCL 777.13c'S APPLICATION OF LEGISLATIVE GUIDELINES TO SUBPART (4) OF MCL 324.3115, AND SUBSEQUENT INTERPRETATION OF SUBPART (4) AS IMPOSING A DETERMINATE AND MANDATORY SENTENCE ARE CONTRARY TO LEGISLATIVE INTENT AND UNCONSTITUTIONAL, BECAUSE OF ITS VAGUENESS AND OF THE 8TH AMENDMENT'S BAN ON CRUEL AND UNUSUAL PUNISHMENT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Kircher*, No. 275215, 2008 WL 3540254 (Mich. Ct. App. Aug. 14, 2008) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal essentially these issues, although worded differently, to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Kircher*, 483 Mich. 986, 764 N.W.2d 281 (2009).

5.      On June 24, 2010, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims as set forth in his "list of issues": (1) failure to charge a crime; (2) constructive amendment; (3) inadmissible evidence; (4) vagueness; (5) lack of evidence; (6) Sixth Amendment; (7) specific statute; (8) indeterminate sentence; (9) separation of powers; (10) actual innocence; (11) prosecutorial misconduct; (12) equal protection; (13) lesser included offense; (14) lenity; (15) Kayak question; (16) entrapment by estoppel; (17) endangerment prior to river; (18) scienter; and (19) amnesty. On July 19, 2010, the trial court denied petitioner's motion for relief from judgment, concluding that petitioner's claims were barred by his failure to raise them on direct appeal, MICH. CT. R. 6.508(D)(3). *See People v. Kircher*, No.

4

05-1189-FH (Washtenaw County, Mich., Cir. Ct. July 19, 2010).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Kircher*, 493 Mich. 959, 828 N.W.2d 386 (2013); *People v. Kircher*, No. 306579 (Mich. Ct. App. Dec. 16, 2011).

       6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 10, 2012.   Petitioner's initial application raises four grounds for relief: (1) unconstitutional statutes; (2) invalid information; (3) lack of probable cause; and (4) actual innocence.  On March 15, 2013, petitioner filed a brief titled "Issues in Support of Petition for Habeas Corpus," in which he sets forth nine issues:

1. MCL 324.3109(1) is not subject to the penalties of 3115.
2. MCL 324.3109(1), is used with penalties is unconstitutional as vague, standardless, and lacking an intent requirement.
3. The information is fatally defective, lacking essential elements of victim, specific substance, specific intent, criminal water quality standard, criminal water quality allegation, required material found in 3115(5).
4. There is no probable cause for substantial public health endangerment of the Huron River, nor intent of defendant.
5. The trial court did not find the Huron River to be a public health endangerment, an essential element in the information.
6. The prosecution violates constitutional protection of "Equal protection under the law."
7. MCL 3115(2) and (4) have no intent requirement.
8. The court did not find the required intent of the defendant.
9. Actual innocence of the charge of causing endangerment of Huron River.

Petitioner filed another brief titled "Ineffective Assistance" on April 11, 2013, essentially arguing that counsel was ineffective for failing to research and argue the issues presented in his habeas application.

       7.      Respondent filed her answer on April 16, 2013.  She contends that some of petitioner's claims are unexhausted or without merit, but that all of the claims are without merit.

8.      Petitioner filed a reply to respondent's answer on June 10, 2013.  Petitioner also filed

a motion for summary judgment on August 8, 2013, as well as two subsequent addendums.

Petitioner's motion for summary judgment and addendums sets forth the following claims:

1.      The trial court did not find the Huron River to be a substantial endangerment to the public health, the charge in the information.
2.      The trial court does not find that the defendant acted "knowingly" as charged in the information.
3.      MCL 324.3109(1) does not have a penalty for violation.
4.      The trial court finds the defendant guilty of endangering his parking lot, an uncharged offense.
5.      MCL 324.3109(1) does not prohibit discharges of injurious substances to dry land, the grounds for conviction.
6.      MCL 324.3109(1) has no scienter requirement, necessary for a felony.
7.      The information lacks essential elements such as a specific substance, the criminal standard for its content, and the content found in the river, any victim or injury from contact.  Fails to charge a crime.
8.      324.3109(1) has no standard to define endangerment, nor does 3115(2) or (4), an essential element of the information.  Standardless statutes are void on their face.
9.      The information lacks the theory used by the court to convict, namely that the defendant endangered his parking lot by a sewage discharge to the parking area.
10.     Conviction cannot be had on a reasonable person standard which is unconstitutional.
11.     Actual innocence of the charge in the information.

Although petitioner's claims are at times not entirely clear, liberally construing his pleadings he

raises numerous challenges that can be divided into five general categories.  First, he raises a number

of challenges regarding the scope and validity of the statutes under which he was convicted,

including: (1) the penalties set forth in MICH. COMP. LAWS § 324.3115 are not applicable to

violations of § 324.3109(1); (2) section 324.3109(1) is unconstitutionally vague; (3) section

324.3115 is unconstitutional because it lacks an intent or other scienter requirement; and (4) section

324.3109(1) does not prohibit discharges onto dry land, the offense for which he was convicted.

Second, petitioner raises several challenges to the validity of the charges against him, including: (1)

defective information; (2) lack of probable cause; and (3) variance between the information and

6

charge for which he was convicted. Third, petitioner raises challenges that go to the trial court's verdict and the evidence against him, including: (1) the trial court failed to find required elements of the offense, specifically the elements of substantial endangerment, intent, and that petitioner acted knowingly; (2) insufficient evidence; and (3) actual innocence. Fourth, petitioner raises numerous claims that his trial counsel was constitutionally ineffective. Finally, petitioner contends that his prosecution violated his right to equal protection of the laws.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized by the Michigan Court of Appeals:

> Defendant's convictions arise from the discharge of raw sewage into a catch basin or storm drain. Specifically, on October 12, 2004, sewage back up occurred in an apartment complex owned by defendant. Defendant reportedly instructed his employees to open a manhole and use a sump pump and hoses to dump raw sewage directly into a catch basin designated for storm water only. State authorities concluded that the catch basin did not lead to a treatment facility, but ultimately led to the Huron River. After the first pump burned out, defendant instructed employees to set up a second pump, and when that stopped functioning, defendant purchased a third pump. Ultimately, defendant pumped raw sewage over a three-day period before being ordered to stop by township officials. During that three-day period, employees and the plumber advised defendant that his conduct was illegal, but he did not end the pumping operation or investigate where the sewage was traveling. It was conservatively estimated that, during this three-day period, defendant discharged 107,000 gallons of raw sewage. A tenant of the apartment complex testified that he drank from the hose, unaware that it contained sewage, and became physically ill.

*Kircher*, 2008 WL 3540254, at *1.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

8

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has

explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was

meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection

2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state

criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus,

"[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the

Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529

U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last

state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38,

44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited

to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131

S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[2]

D.    *Claims Relating to Scope and Validity of the Statutes*

Petitioner first raises several claims challenging the scope and validity of the statutes under which he was convicted. Petitioner was convicted of water resources protection violations under

---

[2]As respondent correctly notes, several of petitioner's claims either have not been fully exhausted or are barred by petitioner's procedural default in the state courts. While procedural issues in a habeas case should ordinarily be resolved first, neither exhaustion nor procedural default is jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995); *cf. Granberry v. Greer*, 481 U.S. 129, 135 (1987) (court may dismiss unexhausted petition on the merits if that course serves judicial economy); 28 U.S.C. § 2254(b)(2) (authorizing court to dismiss unexhausted claims on the merits). Because it is clear that these claims are without merit, the Court may deny them on this basis without resolving respondent's exhaustion and procedural default arguments. With respect to those claims that have not been adjudicated on the merits in the state courts, § 2254(d) is inapplicable and the claims are subject to *de novo* review. *See Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006).

10

MICH. COMP. LAWS §§ 324.3109(1) and 324.3115(2), (4). Section 324.3109(1) provides, in relevant

part, that "[a] person shall not directly or indirectly discharge into the waters of the state a substance

that is or may become injurious to . . . the public health, safety, or welfare." MICH. COMP. LAWS §

324.3109(1)(a). Section 324.3115 provides penalties for violations of the NREPA, which includes

§ 324.3109. That section provides, in relevant part:

> (2) A person who at the time of the violation knew or should have known that
> he or she discharged a substance contrary to this part . . . is guilty of a felony and
> shall be fined not less than $2,500.00 or more than $25,000.00 for each violation.
> The court may impose an additional fine of not more than $25,000.00 for each day
> during which the unlawful discharge occurred. If the conviction is for a violation
> committed after a first conviction of the person under this subsection, the court shall
> impose a fine of not less than $25,000.00 per day and not more than $50,000.00 per
> day of violation. Upon conviction, in addition to a fine, the court in its discretion
> may sentence the defendant to imprisonment for not more than 2 years or impose
> probation upon a person for a violation of this part. . . .
>                                         * * * *
> (4) Upon a finding by the court that the actions of a criminal defendant pose
> or posed a substantial endangerment to the public health, safety, or welfare, the court
> shall impose, in addition to the penalties set forth in subsection (2), a fine of not less
> than $1,000,000.00 and, in addition to a fine, a sentence of 5 years' imprisonment.

MICH. COMP. LAWS § 324.3115(2), (4). Petitioner challenges the scope of these statutes on two

grounds. First, he contends that the penalties set forth in § 324.3115 do not apply to violations of

§ 324.3109. Second, he argues that § 324.3109(1) does not prohibit discharges onto dry land, the

offense for which he was convicted. Petitioner also challenges the validity of these statutes on two

grounds. First, he contends that § 324.3109 is unconstitutionally vague. Second, he contends that

§ 324.3115 is unconstitutional because it lacks an intent or other scienter requirement. The Court

should conclude that petitioner is not entitled to habeas relief on these claims.

> 1.     *Applicability of § 324.3115*

Petitioner first contends that the criminal penalty provisions set forth in § 324.3115 are not

11

applicable to violations of § 324.3109(1).  This claim is without merit.  Section 324.3115(2) explicitly imposes criminal liability for the knowing discharge of a substance "contrary to this part." MICH. COMP. LAWS § 324.3115(2).  This section is in Chapter 324, Article II, Chapter 1, Part 31 of the *Michigan Compiled Laws*.  Section 324.3109(1) is likewise contained in Part 31.  Thus, a discharge that is contrary to § 324.3109(1) is "contrary to this part" as used in § 324.3115(2).

In any event, this issue presents a matter of state law that is not cognizable on habeas review. "The applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).  As the Second Circuit explained, "*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Id*.  Because petitioner's claim is not cognizable on habeas review, and because in any event the criminal penalties set forth in § 324.3115 are applicable to violations of § 324.3109 by the plain language of the statute, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

12

2.    *Discharges onto Land*

Petitioner next contends that the state courts improperly interpreted the statutes at issue to permit conviction based on discharges onto land.  This claim, however, is premised on a mistaken reading of the trial court's verdict.  Petitioner reads the verdict as not finding him guilty of discharging into the Huron River and endangering that body of water, but as finding that he discharged into the parking lot and endangered people using the parking lot.  This reading is incorrect.  The trial court did, indeed, make findings relating to the discharge of the sewage into the parking lot, and the danger it posed to people in the parking lot.  If this was all that the trial court found, petitioner's claim might have some merit.  But the trial court's findings went far beyond this, and explicitly found that petitioner discharged sewage into a water of the state, *i.e.*, the Huron River. In rendering its verdict, the court stated:

> The next element, whether there was a direct or indirect discharge into the waters of the State of Michigan.  The waters of the State of Michigan are defined as waters that are naturally–a naturally occurring water body.  Based on the testimony that has been presented the Court finds that the Defendant knew that there had been a creek on the property, a creek that was subsequently enclosed in part on his property.
>
> The Court heard the testimony of Frank Baldwin, from the Department of Environmental Quality, water bureau division chief, who stated that he had walked up stream from the catch basins located on the tenant's [sic] property, saw aquatic life and vegetation which satisfies the definition or identifies the characteristics that would satisfy the definition of a naturally occurring water body, and therefore would be consistent with a water of the State of Michigan.
>
> Further, there was testimony that the creek flowed directly to the Huron River, and that subsequently to the Defendant's purchase of the property a portion of the creek on his property was, in fact, enclosed.  A port [sic] that says 100 feet east of the catch basin all the way to the Huron River which is approximately 300 feet from the catch basin to the river.  I don't believe there's any dispute and the Court would find that the Huron River is a water of the State of Michigan.
>
> Based on the evidence that's been submitted and therefore the Court finds that the creek that is upstream of the catch basin, the catch basin which is connected to the covered portion or enclosed part of the creek and a drain, and the Huron River are all connected as one water source or flow, and that therefore a discharge of a

13

2:12-cv-14477-RHC-PJK   Doc # 24   Filed 12/04/13   Pg 14 of 38   Pg ID 1686

> substance into the catch basin is a direct discharge into the water system in Michigan.

Excerpt of Bench Trial Tr., dated 10/12/06, at 7-8.  The court further rejected the opinion of defendant's expert that there was no direct discharge because a discharge into the catch basin did not constitute a discharge into the waters of the State of Michigan, further showing that the court found a direct discharge into the waters of the state.  *See id.* at 8-9.  Moreover, the court found that even if there was not a direct discharge, "it was certainly an indirect discharge" based on the testimony that the drain into which sewage was pumped links with the Huron River.  *See id.* at 9-10; *see also*, MICH. COMP. LAWS § 324.3109(1) (prohibiting both direct and indirect discharges into the waters of the state).  Thus, notwithstanding the trial court's statements regarding the discharge into the parking lot, the court clearly and explicitly found that petitioner had both directly and indirectly discharged sewage into the Huron River.  The court thus did not conclude that a discharge onto dry land was sufficient to impose criminal liability, and petitioner's argument that it incorrectly did so is therefore without merit.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.    *Vagueness*

Petitioner next contends that the statutes under which he was convicted are unconstitutionally vague.  Because the Michigan Court of Appeals's rejection of this claim on the merits was reasonable, the Court should conclude that petitioner is not entitled to habeas relief.

*a. Clearly Established Law*

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Posters 'N' Things,*

14

*Ltd. v. United States*, 511 U.S. 513, 519 (1994) (internal quotation omitted); *see also*, *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).  A statute is unconstitutionally vague only if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (internal quotation omitted); *see also*, *United States v. Williams*, 553 U.S. 285, 304 (2008).  "'[P]erfect clarity and precise guidance'" is not required.  *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).  To succeed on a vagueness challenge the party asserting the challenge must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."  *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

The standards governing a void-for-vagueness challenge to the statute have recently been explained by the Supreme Court:

> "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). We consider whether a statute is vague as applied to the particular facts at issue, for "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2718-19 (2010) (parallel citations omitted); *accord Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)) (alterations by quoting court) ("To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.' The void-for-vagueness doctrine embraces these requirements.").  "[C]larity at the

15

requisite level may be supplied by judicial gloss on an otherwise uncertain statute, [however] due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266-67 (1997) (citations omitted). Importantly, "[w]hen a state statute has been construed to forbid identifiable conduct so that interpretation (by the state court) puts these words into the statute as definitely as if it had been so amended by the legislature, claims of impermissible vagueness must be judged in that light." *Wainwright v. Stone*, 414 U.S. 21, 23 (1973) (per curiam) (internal quotation omitted). Under the void-for-vagueness doctrine, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

*b. Analysis*

Petitioner contends that § 324.3109(1) is unconstitutional because it does not define the substances that it is impermissible to discharge into the waters of the state, and does not set a water quality definition. The Michigan Court of Appeals rejected petitioner's vagueness claim, explaining:

> There is no indication that the Legislature intended for a scientific analysis to apply to the terms "substance" or "injurious." Rather, "substance" is defined as "that of which a thing consists; physical matter or mater ... substantial or solid character or quality; ... consistency; body ..." Random House Webster' College Dictionary (2000), p 1306. "Injurious" is defined as "harmful, hurtful, or detrimental, as in effect." Id. at 680, 744 N.W.2d 221. Review of the record reveals that experts for the prosecution testified that the actions by defendant caused a discharge of a substance, raw sewage that was harmful to the public health. Specifically, when a blockage in the sewer system caused a backup into the apartment complex owned by defendant, defendant instructed his employees to uncover a manhole and pump raw sewage, consisting of human feces, human urine, and gray water, into a nearby grassy area and into a storm drain or catch basin. Raw sewage contained viruses, bacteria, and E. coli. Any substance that was pumped into the catch basin was not treated by any municipal facility. Rather, the substance that was poured into the

16

catch basin traveled into the Huron River and ultimately into Ford Lake. A resident of the apartment complex who drank from the hose became physically ill. Moreover, plaintiff's expert, Dr. Joan Rose, testified that surface contact with E. coli can be dangerous to humans, and actual consumption was not required to pose a risk. Even defendant's expert, Robert Hayes testified that he would not kayak upon a water body that had been subject to the release of approximately 100,000 gallons of raw sewage. Thus, defendant's actions in discharging raw sewage into a state water body constituted a discharge of a substance that was or could be injurious to human health. The statute at issue is not void for vagueness when the meaning of the statute's terms as defined by the dictionary demonstrate that defendant's conduct fell within the statutory prohibitions.

*Kircher*, 2008 WL 3540254, at *2.  This determination was reasonable.

As noted above, and as the Michigan Court of Appeals correctly recognized, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495.  Here, there is no question that plaintiff's conduct was clearly proscribed by the statute.  The statute prohibits discharge of "a substance that is or may become injurious to . . . the public health, safety, or welfare."  MICH. COMP. LAWS § 324.3109(1)(a).  "Substance," in its ordinary meaning, consists of any physical thing.  There is no doubt that raw sewage constitutes a "substance" in the ordinary meaning of the word.  Nor can there by any doubt that raw sewage is a substance that "is or may become injurious to . . . the public health, safety, or welfare."  Indeed, the Sixth Circuit has explicitly held that this provision provides fair notice of the conduct prohibited and is not unconstitutionally vague.  *See United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1441 (6th Cir. 1991);[3] *cf. Stock v. State*, 526 P.2d 3, 9-11 (Alaska 1974) (statute defining pollution as "the contamination or altering of waters, land or

---

[3]The *Akzo Coatings* court considered the predecessor statute to § 324.3109(1), which in relevant part was worded identically to § 324.3109(1).  *See Akzo Coatings*, 949 F.2d at 1440 (quoting MICH. COMP. LAWS § 323.6(a) (repealed)) ("'It shall be unlawful for any persons directly or indirectly to discharge into the waters of the state any substance which is or may become injurious to the public health, safety, or welfare; or which is or may become injurious to domestic, commercial, industrial, agricultural, recreational or other uses which are being or may be made of such waters . . . .'").

subsurface land of the state in a manner which . . . makes waters, land or subsurface land unclean, noxious, or impure, or unfit so that they are actually or potentially harmful or detrimental or injurious to public health, safety, or welfare . . ." was not unconstitutionally vague, either on its face or as applied to defendant who dumped raw sewage into stream); *State v. Hamilton*, 388 So. 2d 561, 562-63 (Fla. 1980) (statute defining pollution as presence of any substances "which are or may be potentially harmful or injurious to human health or welfare . . ." not unconstitutionally vague.).

Moreover, the remainder of § 324.3109 provides sufficient clarity to provide notice to a person of ordinary intelligence that the dumping of raw sewage is prohibited by the statute. Paragraph (2) of the statute provides that "[t]he discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated unless the discharge is permitted by an order or rule of the department." MICH. COMP. LAWS § 324.3109(2). While this paragraph was not applicable to petitioner directly, it clarifies in stark terms that raw sewage constitutes one of the substances the discharge of which is prohibited by paragraph (1). Indeed, raw sewage is the *only* substance specifically identified by the statute. Taken as a whole, the statute makes clear to a person of ordinary intelligence that the dumping of raw sewage into waters of the state is prohibited. *See Martin v. Lloyd*, 700 F.3d 132, 136 (4th Cir. 2012) (in determining whether statute is vague, "phrases or words should be considered in the context of the statute as a whole."); *cf. Grayned*, 408 U.S. at 110 (ordinance not impermissibly vague where it was "clear what the ordinance as a whole prohibits.").[4] For these reasons, the Michigan Court of Appeals's rejection of

_____

[4]Petitioner also argues that the statute is vague because it requires a factfinder to evaluate how a reasonable person would act. Although the trial court discussed what a reasonable person would have done in defendant's circumstances, neither the statutes at issue nor the trial court's verdict was based on any reasonable person standard. In any event, "[t]he mere fact that a penal statute is so framed as

18

petitioner's vagueness claim was reasonable, and the Court should therefore conclude that petitioner is not entitled to habeas relief on this claim.

### 4.  *Lack of Intent or Scienter Requirement*

Petitioner next contends that the statutes under which he was convicted violate his right to due process of law because they do not require a showing of intent or other *mens rea* (mental state). This claim fails, for two reasons.

First, although the Supreme Court has recognized the importance of *mens rea* in the Anglo-American legal system, *see generally*, *Morissette v. United States*, 342 U.S. 246 (1952), the "Court 'has never articulated a general constitutional doctrine of mens rea,' and it has never held that a state's definition of a crime must include a mens rea element." *Baltazar v. Cockrell*, 34 Fed. Appx. 151, 2002 WL 495560, at *5 (5th Cir. Mar. 18, 2002) (quoting *Powell v. Texas*, 392 U.S. 514, 535 (1968)).  On the contrary, the Court has explained that it does not "say[] that a 'vicious will' is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient.  There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228 (1957) (citation omitted).  This latitude is even wider in the case of regulatory measures such as the environmental laws involved in petitioner's case.  It is well established that "[a] statute may provide criminal liability without *mens rea* consistent with due process if it is a regulatory measure in the interest of public safety." *United States v. Goodell*, 990 F.2d 497, 499 (9th Cir. 1993) (citing *United States v. Freed*, 401 U.S. 601, 609 (1971)), *quoted with approval in United States v. Murphy*, 96

---

to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct." *United States v. Ragen*, 314 U.S. 513, 523 (1942); *accord Amaya v. New Jersey*, 766 F. Supp. 2d 533, 539-40 (D.N.J. 2011), *aff'd sub nom. Kress v. New Jersey*, 455 Fed. Appx. 266 (3d Cir. 2011).

F.3d 846, 849 (6th Cir. 1996). In short, "a claim that the Constitution requires proof of scienter in every criminal case is absurd." *Mueller v. Sullivan*, 141 F.3d 1232, 1235 (7th Cir. 1998); *see also*, *Shelton v. Secretary, Dep't of Corrections*, 691 F.3d 1348, 1354 (11th Cir. 2012) (quoting *Lambert*, 355 U.S. at 228 and *Staples v. United States*, 511 U.S. 600, 620 (1994) (in turn quoting *Morissette*, 342 U.S. at 260)) ("One very general principle can be distilled from the Court's cases in this area: legislatures have 'wide latitude . . . to declare an offense and to exclude elements of knowledge and diligence from its definition[.]' . . . The Supreme Court has acknowledged that its work in this area has only just begun, noting twice that no court 'has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not.'").

Second, even if the Due Process Clause required a showing of a culpable mental state before criminal liability may be imposed, the statutes under which petitioner was convicted contained a mental state element. While it is true that the general regulatory provisions set forth in § 324.3109(1) require no mental state, the criminal penalty provisions set forth in § 324.3115 do contain such a requirement. Specifically, § 324.3115(2) imposes criminal liability only if the defendant "at the time of the violation knew or should have known that he or she discharged a substance contrary to this part." MICH. COMP. LAWS § 324.3115(2). The trial court, in rendering its verdict, recognized the petitioner's knowledge was an element of the offense, *see* Excerpt of Bench Trial Tr., dated 10/12/06, at 6, and made detailed factual findings regarding petitioner's knowledge, *see id*. at 15-20, 22. Thus, even if the Constitution required criminal statutes to contain some mental state element, that requirement was satisfied here by the knowledge element of the statute. *See Mueller*, 141 F.3d at 1235 ("If it is possible to have strict criminal liability, or liability

20

for criminal negligence, it is certainly permissible to make 'knowledge' a culpable mental state."); *id*. at 1236 ("As far as the Constitution is concerned, . . . proof that the defendants knew what they were doing permits criminal punishment, whether or not the defendants knew or should have known that their acts were unlawful."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Claims Relating to the Validity of the Charges*

Petitioner next raises several claims relating to the validity of the charges against him. Specifically, he contends that: (1) the information that charged him was vague and fatally defective; (2) there was a lack of probable cause to support the charges; and (3) there was a variance between the information and the proof at trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Lack of Probable Cause*

Petitioner first argues that there was a lack of probable cause to support the charges. This claim provides no basis for habeas relief. It is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge his conviction on the basis that he was arrested without probable cause or on the basis of an alleged defect in the state court's preliminary procedures. *See, e.g.*, *Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995); *Biby v. Satran*, 619 F. Supp. 1563, 1567-68

(D.N.D. 1985).

2.      *Vague Information*

Petitioner next contends that the information charging him was impermissibly vague.  This claim is without merit.  The Sixth Amendment provides, in relevant part, that a criminal defendant has the right to "be informed of the nature and cause of the accusation" against him.  U.S. CONST. amend VI.  Notice and an opportunity to defend against the charges as guaranteed by the Sixth Amendment are an integral part of the due process protected by the Fourteenth Amendment, and are accordingly applicable in state prosecutions.  *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948).  The complaint or indictment challenged need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him to prepare a defense.  Thus, "[a]n indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *see also*, *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982); *Ransom v. Davis*, 613 F. Supp. 430, 431 (M.D. Tenn. 1984), *aff'd*, 767 F.2d 921 (6th Cir. 1985).  "[A] charge is sufficiently specific when it contains the elements of the crime, permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution."  *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992).

Here, the information charged, in Count 1,

[t]hat between the dates of October 12-14, 2004, the Defendant David Kircher did either knowingly or was in a position that he should have known, that he discharged a substance contrary to this part, or contrary to a permit or order issued or rule promulgated under this part, either directly or indirectly into the Huron River, contrary to the provisions of Part 31 of the Natural Resources and Environmental Protection Act (NREPA), to wit: MCL 324.3109; and in so doing did pose or posed

22

a substantial endangerment to the public health, safety, or welfare, contrary to MCL 324.3115(4).

        FELONY: Two (2) years and or $2,500.00-$25,000.00 for each violation. The court may impose an additional fine of not more than $25,000.00 for each day during which the unlawful discharge occurred.  MCL 324.3115(2).

Information, at 1 (attached as an exhibit to petitioner's habeas application).  Count 2 is identical, but contains an additional paragraph stating: "Upon a finding by the court that the actions of the defendant pose or posed a substantial endangerment of the public health, safety, or welfare, the court shall impose, in addition to the penalties set forth in subsection (2) above, a fine of not less than $1,000,000.00 and five (5) years imprisonment. MCL 324.3115(4)." *Id.* at 2.  This information was sufficient to provide petitioner of notice of the charges against him.

The language of the information tracked the statutory language, charging petitioner with knowingly discharging a prohibited substance into the Huron River and included the dates of the offense.  The federal courts "have consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms." *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973); *see also*, *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (internal quotation omitted) ("[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.").  As the Supreme Court has explained, it is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).  Petitioner contends that the information was insufficient

because it did not identify a victim, specific substance, or water quality standard. This information, however, was not necessary for petitioner to be able to defend against the charges. It is well established that a charging document need not give "notice of the exact method by which the criminal actions were alleged to have been committed." *Martin v. Kassulke*, 970 F.2d 1539, 1543 (6th Cir. 1992). Because the information provided sufficient notice to allow petitioner to adequately defend against the charges, he is not entitled to habeas relief on this claim.[5]

   3.   *Variance*

   Petitioner next contends that he was convicted of a charge not set forth in the information, namely, endangerment of the parking lot. This claim is without merit, for the reasons explained above. Petitioner's argument that the trial court convicted him solely on the basis of endangering the parking lot is incorrect. As explained above, although the trial court did discuss in its findings the endangerment to the parking lot, the court made explicit factual findings that petitioner

---

   [5]To the extent petitioner claims that the information was insufficient to vest the trial court with jurisdiction or was defective as a matter of state law, his claim is not cognizable on habeas review. It is well-established that habeas review does not extend to questions of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001). As the Supreme Court has long explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917). Whether an indictment, information, or complaint is sufficient to confer jurisdiction on a trial court is likewise an issue of state law which is not cognizable on habeas review. *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *Rose v. Johnson*, 141 F. Supp. 2d 661, 694 (S.D. Tex. 2001). Challenges to the sufficiency of a state court charging document will be cognizable on federal habeas review only where the charging document deprives a petitioner of his due process right to fair notice of the charges against him. *See Boothe v. Wyrick*, 452 F. Supp. 1304, 1310 (W.D. Mo. 1978).

discharged sewage both directly and indirectly into the Huron River, and by doing so endangered the public health, safety, or welfare. There was thus no variance between the information and the charges upon which petitioner was convicted. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Claims Relating to the Trial Court's Findings and the Evidence Against Petitioner*

Petitioner next raises several claims relating to the evidence against him at trial and the trial court's verdict. Petitioner contends that the trial court failed to make necessary factual findings on certain elements of the offenses and that he is actually innocent of the crimes for which he was convicted. Implicit in both of these arguments is an argument that the evidence was insufficient to prove his guilty beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Sufficiency of the Trial Court's Findings*

Petitioner first contends that the trial court's findings were inadequate, because the trial court failed to make findings on all of the elements of the offense. To the extent petitioner contends that the trial court's findings of fact were not sufficiently detailed under the requirements of MICH. CT. R. 6.403, he is not entitled to relief because the claim raises an issue of state law not cognizable on habeas review. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Petitioner has cited, and I have located, no cases suggesting that specific findings of fact are required in a bench trial as a matter of federal constitutional law. On the contrary, the Sixth Circuit has explained that "[a] state cannot be said to have federal due process obligations to follow all of its procedures; such a system would result in the constitutionalizing of every state rule,

25

and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). Thus, "[t]he denial of state-created procedural rights is not cognizable on habeas corpus review unless there is a deprivation of a substantive right protected by the Constitution." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995). The state court's alleged failure to make detailed findings of fact on each element of the offense did not deprive petitioner of a "substantive right protected by the Constitution." Thus, petitioner's conviction does not offend due process even if the trial court failed to issue findings of fact sufficient to satisfy the Michigan Court Rules. *See Witt v. Prelesnik*, No. 92-2354, 1993 WL 473696, at *1 (6th Cir. Nov. 15, 1993); *Tate v. Booker*, No. 06-CV-13156, 2008 WL 2245425, at *5 (E.D. Mich. May 30, 2008) (Cleland, J.).

In any event, the trial court did issue detailed findings of fact addressing each element of the offense. Specifically, the trial court found, consistent with the elements of the crimes charged, that: (1) petitioner discharged a substance, consisting of untreated sewer water, contrary to part 31 of the NREPA, *see* Excerpt of Bench Trial Tr., dated 10/12/06, at 7; (2) the discharge was directly or indirectly into a water of the state, *see id*. at 7-10; (3) the substance was itself or may become injurious, *see id*. at 10-14; (4) the substance was injurious to the public health, safety, and welfare, namely, to swimmers, boaters, farmers, fishermen, and others using the Huron River, *see id*. at 14-15; (5) petitioner knew or should have known that he discharged an illegal substance, *see id*. at 15-20; and (6) petitioner's actions posed a substantial endangerment to the public health, safety and welfare, *see id*. at 20-23. These detailed factual findings were sufficient to support petitioner's conviction. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      2.    *Actual Innocence*

Petitioner next argues that he is actually innocent of the charges against him. This claim is without merit. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).[6]

---

[6]In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief," but explicitly declined to determine whether this is, in fact, the constitutional rule. *Herrera*, 506 U.S. at 417; *see also*, *House*, 547 U.S. at 555. This rule affords no basis for relief to petitioner, however. First, as *Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no applicability in a non-capital case. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247 Fed. Appx. at 711. Second, because the Supreme Court has recognized that the question whether there

Further, even if an actual innocence claim were otherwise cognizable, petitioner is not entitled to habeas relief. Petitioner points to no new, reliable evidence not presented at trial that establishes his actual innocence. Rather, petitioner's claim is merely that the evidence was insufficient to prove his guilt beyond a reasonable doubt. As explained below, that claim is without merit, and his actual innocence claim therefore likewise fails. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3. *Sufficiency of the Evidence*

Related to his previous two claims, petitioner argues that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. This claim is without merit. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the

---

exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), a state court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1). *See Reyes v. Marshall*, No. CV 10-3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D. Cal. Apr. 14, 2011). *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure to grant relief on basis which Supreme Court has recognized is an open question cannot be unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (same).

evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.[7]

Here, there was sufficient evidence to prove petitioner's guilt on each element of the offense. There is no question that petitioner discharged a raw sewage. The state's expert testified that discharge was both directly and indirectly into the Huron River, as it was dumped into a catch basin that emptied into the river. There was also testimony that petitioner knew of the catch basin on the property. Further, the state's expert testified that raw sewage is an injurious substance, and that the discharge posed a danger to the health and safety of users of the Huron River. Further, there was evidence that petitioner knew he was discharging a harmful substance. As the Michigan Court of

---

[7]Although *Jackson* and *Coleman* involved sufficiency of the evidence reviews of jury verdicts, the same standard is applied to verdicts rendered in bench trials. *See United States v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010).

Appeals observed, "Clifton, the plumber called by Liebenthal to address the sewage backup, testified that he warned defendant that the pump operation was illegal.  Clifton testified that the pumping operation was dumping sewage into a basin for storm water only, and he told defendant that the process was polluting the water."  *Kircher*, 2008 WL 3540254, at *7.  Contrary to petitioner's argument, the trial court made specific factual findings that petitioner's discharge endangered the Huron River, and that finding is supported by the testimony of the state's expert.

In short, as noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses.  The trial court, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution.  In light of the testimony, the verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.[8]

G.   *Equal Protection*

Petitioner next contends that his prosecution violated his right to equal protection of the law

---

[8]To the extent that petitioner argues that he is entitled to habeas relief because the judge's verdict was against the great weight of the evidence, his claim is not cognizable.  It is well established that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra.*  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

2:12-cv-14477-RHC-PJK   Doc # 24   Filed 12/04/13   Pg 31 of 38   Pg ID 1703

because other similar discharges of sewage have not been criminally prosecuted. This argument is without merit. "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380, n. 11 (1982)). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). A prosecutor's decision to prosecute one violator while not prosecuting others will run afoul of the Equal Protection Clause only when the decision is based on the violator's race, religion, or other arbitrary classification, or when based on the violator's exercise of protected statutory or constitutional rights. *See United States v. Armstrong*, 517 U.S. 456, 465-66 (1996); *Wayte*, 470 U.S. at 608; *United States v. TePoel*, 652 F.3d 979, 981 (7th Cir. 2009) ("A selective-prosecution challenge can be successful only if the defendant establishes that the decision to prosecute him was made on the basis of an invidious ground such as race, religion, or the exercise of constitutional rights."). To succeed on a selective prosecution claim, petitioner bears a heavy burden of showing that (1) people similarly situated to him were not prosecuted, and (2) the decision to prosecute him was based on an impermissible discriminatory motive. *See United States v. Peterson*, 652 F.3d 979, 981 (8th Cir. 2011). Here, petitioner has not alleged, much less met his heavy evidentiary burden of showing, that the decision to prosecute him was based on an impermissible factor such as race, religion, or his exercise of protected constitutional rights. Accordingly, his selective prosecution claim fails, and he is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel*

Finally, petitioner contends that his trial counsel was ineffective in a number of respects. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Legal Standard*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the

32

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.      *Analysis*

Petitioner's ineffective assistance claim alleges that counsel was ineffective for failing to raise the various challenges to his conviction that he raises here.  He contends that counsel was ineffective for failing to challenge the applicability and scope of the statutes, for failing to raise a vagueness challenge to the statute and the prosecution's failure to show his intent, for failing to raise a selective enforcement claim, for failing to challenge probable cause, and for failing to require proof of endangerment to the Huron River and proof regarding the scientific levels necessary to

support a finding of harmfulness. As explained above, each of these challenges is without merit, and thus counsel cannot be deemed ineffective for failing to have pursued these matters at trial or in the court of appeals. It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.   *Recommendation Regarding Certificate of Appealability*

    1.   *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

34

deserve encouragement to proceed further.''" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons explained above.  Petitioner's claims challenging the state court's construction of §§ 324.3109(1) and 324.3115, the alleged lack of probable cause to support the charges, the

35

insufficiency of the trial court's findings, and actual innocence all present claims that are not cognizable on habeas review, and thus the resolution of these claims is not reasonably debatable. Petitioner's claims challenging the construction of the statute to cover a discharge onto land and his related claim that there was a variance between the information and the charge are clearly without merit, as the trial court's findings make plain that the court found petitioner to have discharged sewage into the Huron River.  Thus, the resolution of these claims is not reasonably debatable. Petitioner's claim that the statute is unconstitutionally vague is without merit because the plain language of the statute, as well as the statute's actual treatment of sewage, make it clear that petitioner's conduct was prohibited.  Thus, the conclusion that the Michigan Court of Appeals reasonably applied clearly established law in denying this claim is not reasonably debatable.  The resolution of petitioner's challenge to the statute on the grounds that it lacks a scienter requirement is not reasonably debatable because (a) the Supreme Court has never set a constitutional standard of scienter in criminal statutes, and (b) in any event, the statute requires scienter, to wit, knowledge. Thus, the resolution of this claim is not reasonably debatable.  Because the information tracked the statutory language and provided a date for the offense, the resolution of petitioner's claim relating to the sufficiency of the information is not reasonably debatable.  Further, because there was abundant evidence presented through both lay and expert witnesses that petitioner discharged sewage into the catch basin leading to the Huron River, and that the sewage posed a threat to the health, safety, and welfare of the public, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable.  And because petitioner does not allege that he was selected for prosecution on the basis of a class-based animus or the exercise of protected rights, the resolution of his selective prosecution claim is not reasonably debatable.  Finally, because petitioner's

36

ineffective assistance claims are derivative of his substantive claims and because the resolution of those substantive claims is not reasonably debatable, it follows that the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law, and that petitioner's claims that were not decided on the merits in state court are either without merit or not cognizable on habeas review. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus and deny his motion for summary judgment. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Date: December 4, 2013                          s/Paul J. Komives
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 4, 2013.

                                    s/ Kay Doaks
                                    Case Manager

38